UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CHARLES E. PERKINS,
  Plaintiff,

V.

MARY KATKE, AMY MUELLER, UNKNOWN NURSE (9-18-24; Medical emergency responder), UNKNOWN NURSE (9-17-24; P.M. med-line, and UNKNOWN NURSE (9-18-24; P.M. med-line), sued in their individual and official capacities,
  Defendants.

FILED - GR
June 27, 2025 12:39 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: JV / 6-27

Case No. _____

Hon. Judge: _____

1:25-cv-719
Maarten Vermaat
U.S. Magistrate Judge

# COMPLAINT WITH JURY DEMAND

This is a civil rights action filed by Charles E. Perkins, a state prisoner, for damages and injunctive relief under 42 U.S.C. §1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution. The plaintiff also alleges the tort of negligence in violation of Michigan State law.

## (Previous lawsuits)

Plaintiff has previously filed a civil suit in Federal Court, Eastern District of Michigan. It was settled at the pretrial level. That action is no longer pending.

## (Jurisdiction)

1) This Court has jurisdiction over the plaintiff's claims for the violation of federal constitutional rights under 42 U.S.C. §§ 1331(1) and 1343.

(Page 1- of - 15)

2) This Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

(Parties)

3) The plaintiff, Charles E. Perkins, was incarcerated at the Kent County Correctional Facility (KCCF) during the events described in this complaint.

4) Defendant Mary Katke is the Medical Director at KCCF. She is sued in her individual and official capacities.

5) Defendant Amy Mueller is the Medical Supervisor at KCCF. She is sued in her individual and official capacities.

6) Defendant Unknown Nurse (9-18-24: Medical emergency responder) is sued in her individual and official capacities.

7) Defendants Unknown Nurse (9-17-24: P.M. Med-line), and Unknown Nurse (9-18-24: P.M. Med-line), both distribute medication at KCCF. They are sued in their individual and official capacities.

8) All the defendants have acted, and continue to act under color of state law at all times relevant to this complaint.

(Facts)

9) Plaintiff has a long history of mental illness, past and current.

(Page 2-of-15)

10) Plaintiff had suffered multiple injuries to both his shoulders, and lumbar spine while incarcerated in the Michigan Department of Corrections.

11) While plaintiff was out on parole, he was in physical therapy and walked with a cane. During one of plaintiff's three(3) emergency room visits, by way of an ambulance, to St. Mary's Hospital in Grand Rapids, Michigan, he was prescribed "oxycotin," and subsequently "gabapentin." Both for pain.

12) Plaintiff became dillusional and suicidal as a result of the medications side-effects, and committed a crime. The victims told police that it appeared as though something unusual was wrong with plaintiff, and that he kept saying he was going to "kill himself."

13) On August 26, 2024, plaintiff was arrested and placed in a camera cell in the mental health pod at KCCF, under suicide watch. On or about August 29, 2024, plaintiff was classified to general population and moved to pod M-1, cell-13.

14) Approximately two(2) weeks later plaintiff was seen by Dr. Unknown Flentje, from mental health, who proscribed two(2) psychosis medications for plaintiff. The medications were, (1) "cymbalta," for anxiety, depression, and pain, (2) "prazosin", to slow plaintiff's heart-rate when awakening from nightmares.

15) The cymbalta is to be administered at 30mgs, once daily, for seven (7) days. Then increased to 60mgs, once daily, for one (1) year. The prazosin is to be administered at 1mg, once daily, for seven (7) days. Then increased to 2mgs, once daily, for one (1) year. The two medications are scheduled to begin on September 17, 2024, during the p.m. med-line.

(Deliberate Indifference to Serious Medical Need)

(Pod "M1" Incidents)

16) On September 17, 2024, the first night of receiving my psych medications (among other medications), I awakened in the middle of the night, dizzy and dillusional. I began to panic, but assumed it was normal.

17) The next night (September 18, 2024), after taking my p.m. medications, I awakened in the middle of the night to urinate, and stumbled to the toilet. With my left hand on the sink and right hand on the wall, I braced myself in an attempt to urinate. I was dizzy, seeing colored spots, heart beating "very" rapidly, and struggling to breath. It kept getting worse. I stumbled backwards onto my bunk, with my back and head hitting the wall. My cell-mate asked, from the top-bunk, "what's wrong?" I didn't respond. I just layed on my bunk struggling to breath, trying to see through the clouds of colorful spots.

18) After a short while, plaintiff got up, and stumbled to the door. With his right hand pressed against the door-glass, and left hand on the wall, plaintiff pressed the "emergency button" with his left hand. Deputy Unknown responded by saying, "what's your emergency?" Plaintiff repeatedly said, "call medical, I can't breath!" After several attempts, Deputy unknown said, "I'm calling medical!" Plaintiff stumbled to his bunk, fell on it, closed his eyes, tried controlling his breathing, and slow his heart-beats. Plaintiff's heart was pounding so hard and rapidly, he was sure it would explode.

19) I don't know how long it took for unknown nurse (9-18-24: medical responder) to arrive, but she came with only her laptop. She had to leave to go get medical equipment. The deputy locked me back in my cell until she returned. I was terrified, still struggling for oxygen. I thought I was about to die.

20) The nurse returned with a bloodpressure cuff. No oxygen. She took my bloodpressure, and it was low. Even though I was still struggling with my breathing, she provided me with no oxygen. I had to regain normal breathing on my own. I told her about the medications I had just started on the night before, and my previous reaction. She started looking up my medications in her computer.

(Page 5-of- 15)

After a short time passed, she stated: "here's the problem." She continued by saying: "They started you with 90mgs of cymbalta, instead of 30mgs, and 3mgs of Prazosin, instead of 1mg." Looking puzzled, I said to her: "why would the Doctor do that, he said he was starting me at 30mgs." She replied with: "that's what it says right here." Pointing at her laptop. I suggested being sent to the hospital, but the nurse declined.

21) After the 9-18-24 incident, I began refusing my psych medications. I kited Mental Health and requested to speak with Dr. Flentje about my medications and the problems I have had with them. I was seen by a male nurse, who said he acts as a go-between for medical and mental health. He brought with him a copy of my medications that he printed off of the computer. It's the same list the nurse who responded to my 9-18-24 emergency was looking at on her laptop. And the same list the nurses were seeing when they passed out medication. Refer to attached "Exhibit-A."

22) After receiving the list, I was confused, and trying to figure out why the nurse said that I was getting 90mgs of cymbalta, and 3mgs of prazosin. I discovered that the nurses were not paying attention to, or not trained on the "start-stop" dates. I was ordered daily bloodpressure-

checks, which remained low for numerous days. I later learned that only two (2) of them had been recorded into the computer. Since the incident, I've remained fatigued, with very little energy.

23) On September 22, 2024, during the p.m. med-line, I asked the med-line nurse if my cymbalta 60mg capsules were already in the med cart? Even though I don't start taking them until September 24th (in two days). She said, "yes they are." I asked if I could take a look at them? She took them out the drawer and held them up so I can see them. I looked and saw that there were two (2) pills missing. I looked again to verify my name, pill name, and milligrams.

24) The next night (9-23-24), during the p.m. med-line, unknown nurse attempted to give me a 60mg cymbalta capsule, and I stopped her. I told her about the medication start-stop dates on her computer, and that the 60mgs don't start until tomorrow. She looked at her computer, thanked me for stopping her, and apologized. She took the pill out of the cup and discarded it. It's all on camera.

(Pod "M3" Incidents)

25) On November 2, 2024, during the p.m med-line, unknown nurse dumped someone else's pills into my cup of water I was holding. I looked in the cup, then asked: "what's this"? She looked at me puzzled, then said: "oh, I'm sorry"! She took the cup of meds from me, and sat them aside. Then pulled my meds from her drawer. Again, all on camera.

26) On or about November 7, 2024, Nurse Practioner Amy Rice came to see me. She apoloaized for the lack of care I've been provided. She also confirmed to me that the symptoms I experienced on the night of 9-18-2024, were consistent with that of someone who had been given an overdosage of medication, or someone else's medication. It was too extreme for mere symptoms of being light-headed, or dizzy.

(Page 8-of-15)

27) On or about November 9, 2024, Medical Director Mary Kotke came to see me. She also apologized for the lack of care I've been receiving.

(Pod "M2" Incidents)

28) On or about November 21, 2024, sometime during the night there was a loud ringing in my ears, and I felt dizzy. I requested a bloodpressure check, which was: 140-something/90. I have been experiencing the ringing in my ears regularly, but not as loud as today.

29) After previously being put back on cymbalta, on the advice of Dr. Flentje, then increased again later, on his advice. My symptoms of fatigued, with a loud ringing in both ears were getting worse. I then requested to be reduced from 90mgs to 60mgs. See attached Exhibits "D" and "E". But for some odd reason, on March 13, 2025, I was completely taken off of my cymbalta.

30) On March 16, 2025, my bloodpressure again was high. After explaining to the nurse about my requesting to be reduced from 90-to-60 mgs of cymbalta, then being completely taken off, she looked in her computer. She found that most of my medical requests had not been scanned into the computer, causing a mix-up in communications.

31) On the morning of March 18, 2025, Dr. Flentje and another gentleman who was observing us, came to see me. Dr. Flentje told me that only one (1) out of my four (4) recent medical requests had been scanned into the computer, and received by him. He said he just received a request from me to be put back on cymbalta, and that's why he's here seeing me today. I told Dr. Flentje that I submitted that kite months ago, and that the nurse who checked my bloodpressure two days ago must have scanned them for me.

32) Dr. Flentje thought I had been taken off cymbalta in December 2024, and not taken it since. He said being taken off of 90 mgs "cold turkey" is dangerous. He said the dosage must gradually be reduced. He apologized.

## (Exhaustion of Administrative Remedies)

33) The plaintiff has exhausted his administrative remedies, as available to him, with respect to all claims and all defendants. See attached Exhibits "B" and "C".

## (Claims for Relief)

34) The failure of defendant Mary Katke of assuring that the nurses were being properly trained at dispensing medications, and responding efficiently to medical emergencies has constituted a deliberate indifference to plaintiff's serious needs in violation of the Eighth Amendment to the United States Constitution, and the tort of negligence under Michigan law.

35) The failure of defendant Amy Mueller of assuring that the nurses were properly trained in dispensing medications has constituted deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution, and the tort of negligence under Michigan law.

36) The actions of unknown nurse (9-18-24: Medical Emergency responder) in responding to plaintiff's medical emergency call with nothing more than a laptop, then having to leave plaintiff to get equipment, not providing oxygen when plaintiff was struggling to breathe, and not seeking permission for possible hospitalization, has constituted deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment of the United States Constitution, and the tort of negligence under Michigan law.

37) The actions of both unknown nurses (9-17-24: P.M. med-line) and (9-18-24: P.M. med-line) of not paying attention to the start-stop dates of medications, resulting in administering too high of a dosage, has constituted deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment to the United States Constitution, and the tort of negligence under Michigan law.

## (Relief Requested)

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendant Katke failed to assure that nurses were properly trained in responding to medical emergencies, and dispensing medications, which resulted in the deliberate indifference to plaintiff's serious medical need in violation of the U.S., and Michigan Constitutions.

2. Defendant Mueller failed to adequately train and/or supervise the med-line nurses on distributing medications. As a result, constituted a diliberate indifference to plaintiff's serious medical needs, in violation of the U.S., and Michigan Constitutions.

3. Defendant Unknown Nurse's (9-18-24: medical emergency responder) failure to adequately respond to plaintiff's medical emergency constituted deliberate indifference to plaintiff's serious medical needs in violation

(Page 13-of-15)

of the U.S., and Michigan Constitutions.

4. Defendants unknown nurse (9-17-24: med-line) and unknown nurse (9-18-24: med-line) actions were deliberately indifferent to plaintiff's serious medical needs, in violation of the U.S., and Michigan Constitutions.

B. Award compensatory damages in the following amounts:

1. $50,000 jointly and severly against defendants Katke, Mueller, unknown nurse (9-18-24: medical emergency responder), unknown nurse (9-17-24: P.M. med-line), and unknown nurse (9-18-24: P.M. med-line), for physical and emotional injuries, as a result of their failure to provide plaintiff with adequate medical care.

(Page 14-of-15)

C. Award punitive damages in the following amounts:

1. $20,000 each against defendants Katke, Mueller, unknown nurse (medical emergency responder), unknown nurse (9-17-24: p.m. med-line), and unknown nurse (9-18-24: p.m. med-line).

D. GRANT such other relief as it may appear that plaintiff is entitled.

Dated: 06-22-2025

Respectfully submitted,

*Charles E. Perkins*
Charles E. Perkins, pro se.

I, Charles E. Perkins, swear under penalty of perjury, that the above-mentioned allegations are true and accurate to the best of my knowledge and belief.

*Charles E. Perkins*

(Page 15-of-15)

