UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHARLES E. PERKINS,

                Plaintiff,

v.

MARY KATKE et al.,

                Defendants.

_____/

Case No. 1:25-cv-719

Honorable Maarten Vermaat

## OPINION

This is a civil rights action under 42 U.S.C. § 1983 brought by a state parolee detained in the Kent County Correctional Facility. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does

not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated in the Kent County Correctional Facility (KCCF), located in Grand Rapids, Kent County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following KCCF staff in their individual and official capacities: Medical Director Mary **Katke**, Medical Supervisor Amy **Mueller**, Nurse **Unknown Party #1** serving as the Emergency Medical Responder on September 18, 2024, Nurse **Unknown Party #2** working

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

in the p.m. med line on September 17, 2024, and Nurse **Unknown Party #3** working in the p.m. med line on September 18, 2024. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that, on August 26, 2024, Plaintiff was arrested and placed in KCCF. (Compl., ECF No. 1, PageID.3.) Approximately two weeks after his arrival, Plaintiff was examined by non-party Dr. Flentje for mental health. (*Id.*) Dr. Flentje prescribed Plaintiff two "psychosis medications," Cymbalta and Prazosin. (*Id.*) The mediations were scheduled to begin on September 17, 2024, with the Cymbalta to be administered at 30 mg for the first seven days, and at 60 mg thereafter, and the Prazosin to be administered at 1 mg for the first seven days, and at 2 mg thereafter. (*Id.*, PageID.4.)

On September 17, 2024, the first day receiving the prescribed medications, Plaintiff awoke in the middle of the night; he was dizzy and delusional. (*Id.*) The following day, Plaintiff also experienced dizziness, a rapid heartbeat, and seeing spots in the middle of the night. (*Id.*) Plaintiff pushed the emergency button and requested medical assistance for a non-party Deputy, reporting that he felt that he was unable to breathe. (*Id.*) When Defendant Unknown Party #1 arrived at Plaintiff's cell, she had only her laptop and had to leave to retrieve medical equipment. (*Id.*) Defendant Unknown Party #1 took Plaintiff's blood pressure, which was low, but did not provide Plaintiff with oxygen. (*Id.*) When Defendant Unknown Party #1 looked at Plaintiff's medications on the computer, she learned that Plaintiff had been given 90 mg of Cymbalta instead of 30 mg, and 3 mg of Prazosin instead of 1 mg. (*Id.*, PageID.6.) Plaintiff requested to go to the hospital, but Defendant Unknown Party #1 declined. (*Id.*)

After the September 18, 2024, incident, Plaintiff began refusing his medications. (*Id.*) A non-party nurse confirmed that Plaintiff had been given 90 mg of Cymbalta instead of 30 mg, and

3 mg of Prazosin instead of 1 mg. (*Id.*) Plaintiff was given daily blood pressure checks which remained low. (*Id.*, PageID.7.)

On September 22, 2024, Plaintiff spoke with a non-party med line nurse and learned that his 60 mg pills of Cymbalta were already in the cart even though Plaintiff was not to begin receiving them for two more days. (*Id.*) The following night, "Unknown Nurse" attempted to give Plaintiff 60 mg of Cymbalta; however, when Plaintiff stopped her, she apologized and threw it out. (*Id.*)

On November 2, 2024, "Unknown Nurse" mistakenly gave Plaintiff pills that had been prescribed for another inmate. (*Id.*, PageID.8.) When Plaintiff alerted her to the mistake, she apologized and took the pills from Plaintiff and set them aside. (*Id.*)

On November 7, 2024, non-party Nurse Practitioner Amy Rice apologized to Plaintiff for the care that he received and told Plaintiff that she believed that the symptoms that Plaintiff experienced on September 18, 2024, were consistent with an overdose of medication or having been given the wrong medication. (*Id.*) On November 9, 2024, Defendant Katke also apologized for the lack of care. (*Id.*, PageID.9.)

On November 21, 2024, Plaintiff felt dizzy during the night with a loud ringing in his ears. (*Id.*) He requested and received a blood pressure check. (*Id.*)

Dr. Flentje had put Plaintiff on Cymbalta and then later increased it. (*Id.*) Plaintiff's symptoms of fatigue and loud ringing in his ears were getting worse following the increase, so Plaintiff requested that the prescription be reduced from 90 mg to 60 mg. (*Id.*)

On March 13, 2025, for reasons unknown, Plaintiff's prescription for Cymbalta was discontinued. (*Id.*) Three days later, on March 16, 2025, Plaintiff's blood pressure was again high.

(*Id.*, PageID.10.) The non-party nurse examining Plaintiff noted that most of Plaintiff's medical requests had not been scanned into the computer. (*Id.*)

Defendant Flentje and another non-party saw Plaintiff on March 18, 2025. (*Id.*) Defendant Flentje told Plaintiff that only one of Plaintiff's four requests had been scanned and received by Defendant Flentje. (*Id.*) Defendant Flentje further explained that he was seeing Plaintiff because he had just received Plaintiff's request to be put back on Cymbalta. (*Id.*) At that time, Defendant Fletje told Plaintiff that he thought that Plaintiff had been taken off Cymbalta in December of 2024 and had not received it since. (*Id.*) He also explained that taking Plaintiff off 90 mgs of Cymbalta "cold turkey" is dangerous and that it must be gradually reduced. (*Id.*)

Plaintiff states that he brings Eighth Amendment medical care claims against Defendants, including claims against Defendants Katke and Mueller for failing to properly train medical staff. (*Id.*, PageID.11–12.) He seeks both declaratory and monetary relief. (*Id.*, PageID.14–15.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Individual Capacity Claims

### 1.    Defendants Katke and Mueller

Plaintiff names Defendants Katke and Mueller in their individual capacities and alleges that each Defendant failed to ensure that the KCCF medical staff was properly trained in the administration of medication and emergency response. (Compl., ECF No. 1, PageID.11.)

Government officials, such as Defendants Katke and Mueller, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory

liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts that would plausibly suggest that Defendant Katke or Defendant Mueller authorized, approved, or knowingly acquiesced in the conduct of their subordinates. Indeed, Plaintiff's complaint fails to allege that Defendants Katke and Mueller were aware of the incidents described in Plaintiff's complaint before or at the time that they occurred, or aware that KCCF medical staff lacked training such that it could be said that Defendants Katke and Mueller were personally deliberately indifferent to the rights of KCCF detainees like Plaintiff. Absent a causal connection between the active behavior of Defendants Katke and Mueller and

Plaintiff's injuries, Plaintiff cannot maintain a claim against Defendants Katke and Mueller, personally. *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Accordingly, the Court will dismiss Plaintiff's claims against these Defendants in their individual capacities for failure to state a claim.

### 2.    Medical Care Claims

Plaintiff contends that Defendants exhibited deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights. (Compl., ECF No. 1, PageID.11–12.) Plaintiff is parolee, "[h]eld under custody."[2] Courts are split on whether an individual being held for a suspected parole or probation violation is to be treated as a pretrial detainee or a convicted prisoner. *See Green v. Taylor*, 1:22-cv-1007, 2023 WL 415502, at *4 (W.D. Mich. Jan. 26, 2023) ("The issue of whether a person confined during the pendency of probation violation proceedings should be treated as a pretrial detainee or a convicted prisoner for purposes of a constitutional challenge to jail conditions is an issue upon which courts have differed.") (collecting cases). Which means that it is unclear whether Plaintiff's claims should be judged according to an Eighth or Fourteenth Amendment standard. While the Eighth Amendment limitation applies to "punishments," a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted).

---

[2]*See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=923781 (last visited July 10, 2025).

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith*, 975 F.3d at 566 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). Because the question is unsettled, the Court will examine Plaintiff's claims under both an Eighth and a Fourteenth Amendment standard.

### a.    Eighth Amendment Claims

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner

10

who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *SeeMiller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, Plaintiff claims that, on September 17, 2024, and September 18, 2024, Plaintiff experienced symptoms consistent with overdose of Cymbalta and Prazosin, including dizziness, delusions, seeing spots, a rapid heartbeat, and feeling as if he was unable to breathe. (Compl., ECF No. 1, PageID.5.) Plaintiff believes that he should have been given oxygen but acknowledges that he was able to "regain normal breathing" on his own (*id.*) and does not allege that he suffered any lasting effects or required further medical care.

Though Plaintiff alleges that he requested that he be sent to the hospital, Plaintiff does not provide the Court with any facts that would plausibly suggest that hospitalization was in fact required or that Plaintiff's symptoms posed a substantial risk of serious harm or an obvious need for medical attention. Accordingly, the Court finds that Plaintiff has not sufficiently alleged facts that would satisfy the objective component of an Eighth Amendment claim. *See Mattox v. Edelman*, 851 F.3d 583, 599 (6th Cir. 2017) (holding that the plaintiff failed to plead an objectively serious medical condition where he alleged symptoms of chest pains, shortness of breath, fatigue, and dizziness, but did not allege that he actually suffered a heart attack or some similarly serious medical problem). Therefore, if Plaintiff's medical allegations are considered under the Eighth Amendment standard, he has failed to state a claim and his claims would be properly dismissed.

Because Plaintiff "did not plead an objectively serious medical condition, there is no need to analyze whether he sufficiently pleaded the subjective prong of his deliberate indifference claim." *Id.* Nonetheless, Plaintiff also fails to satisfy the subjective component with respect to each named Defendant.

Plaintiff alleges that Defendant Unknown Party #1, "Unknown Nurse (9-18-24: emergency medical responder)" arrived at Plaintiff's cell on September 18, 2024, after being summoned by a non-party KCCF Deputy. (Compl., ECF No. 1, PageID.5.) She initially brought only her laptop and had to leave to retrieve medical equipment. (*Id.*) Defendant Unknown Party #1 took Plaintiff's blood pressure but did not give Plaintiff oxygen and did not take Plaintiff to the hospital. (*Id.*) Plaintiff was able to "regain normal breathing" on his own. (*Id.*) While Plaintiff may be unhappy with the care that he received and disagree with the course of treatment provided by Defendant Unknown Party #1, the facts as alleged by Plaintiff do not suggest that the care provided by Defendant Unknown Party #1 was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605 (citation omitted). Therefore, Plaintiff's allegations fail to satisfy the subjective component of an Eighth Amendment claim against Defendant Unknown Party #1.

The same is true of Plaintiff's claims against Defendants Unknown Party #2, "Unknown Nurse (9-17-24: P.M. Med-line)" and Unknown Party #3, "Unknown Nurse (9-18-24: P.M. Med-line)". Plaintiff alleges that, on September 17, 2024, and September 18, 2024, Unknown Parties #2 and #3, respectively, gave Plaintiff 90 mg of Cymbalta and 3 mg of Prazosin instead of the 30 mg of Cymbalta and 1 mg of Prazosin that Plaintiff had been prescribed. (Compl., ECF No. 1, PageID.5.) However, Plaintiff does not allege any facts that would plausibly suggest that either Defendant was personally aware that their actions posed a substantial risk of serious harm to Plaintiff and deliberately disregarded that risk. At best, Plaintiff's complaint suggests negligence.

14

However, the Constitution does not create liability for medical malpractice. *Estelle*, 429 U.S. at 105.

Accordingly, for each of the foregoing reasons, the Court finds that Plaintiff fails to state an Eighth Amendment claim against Defendants Unknown Party #1, Unknown Party #2, and Unknown Party #3.

### 3.    Fourteenth Amendment Claims

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). Then, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Id.* at 392–93. *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit "modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness." *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 597 (quoting *Castro v. City of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately

15

(not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Therefore, for the same reasons that Plaintiff's claims fail to satisfy the objective standard under the Eighth Amendment, the Court finds that Plaintiff fails to state a claim under the Fourteenth Amendment.

Accordingly, even if analyzed under the Fourteenth Amendment's due process standard, the Court finds that Plaintiff fails to state a medical care claim against the named Defendants.

### 4.      Claims Based Upon the Actions of Non-Parties

In addition to the events of September 17 and 18, 2024, and the actions of Defendants Unknown Parties #1, #2, and #3, Plaintiff describes actions by one or more non-party med line nurses and Unknown Nurse(s). Plaintiff alleges that, after the September 18, 2024, incident, a non-party med line nurse learned that Plaintiff's 60mg pills were already on the cart to be distributed, an "Unknown Nurse" attempted to give Plaintiff the wrong dose of medication and the same or a different "Unknown Nurse" mistakenly gave pills meant for another inmate. (Compl., ECF No. 1, PageID.6–9.) Plaintiff also describes that Plaintiff's requests were not scanned into Plaintiff's file and that Plaintiff's medication was discontinued "cold turkey" by an unknown or unidentified party. (*Id.*, PageID.10.)

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544.

Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were personally involved in the foregoing actions or decisions. Thus, to the extent

16

alleged, Plaintiff fails to state an Eighth Amendment claim against any named Defendant premised upon the events after September 18, 2024.

### B.    Official Capacity Claims

Plaintiff also sues all Defendants in their official capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire*, 330 F.3d at 810; *Graham*, 473 U.S. at 165–66. Plaintiff's official capacity claims are, therefore, claims against Defendants' employer(s).[3]

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in

---

[3] Plaintiff does not specify whether Defendants are employed by Kent County or whether some or all the Defendants may be employed by a private healthcare company which provides services within the KCCF. To the extent that some or all the Defendants are employed by a private entity, a private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff's allegations rest on a theory that the KCCF medical staff was improperly trained in dispensing medications and responding efficiently to medical emergencies. (ECF No. 1, PageID.11.) However, the Court cannot infer inadequate training from the incidents described in Plaintiff's complaint. The Supreme Court has long held that an inference of inadequate training such as this is "unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). Allowing an inference of inadequate training based only upon the isolated incidents of wrongdoing alleged by Plaintiff, would permit "a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker." *Id.*

Here, Plaintiff has not provided the Court with any factual allegations concerning the training provided to KCCF medical staff. Therefore, the Court cannot infer that the incidents which arose were the fault of inadequate training, as opposed to any other factor, including individual negligence.

Moreover, in the case of a *Monell* claim for failure to train:

> "municipal liability under § 1983 attaches where—and only where—a *deliberate choice* to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis added) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985) ("'policy' generally implies a course of action consciously chosen from among various alternatives.")).

*Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012); *see also Slusher v. Carson,* 540 F.3d 449, 457 (6th Cir. 2008) (citation omitted) ("The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). To establish deliberate indifference in the context of a failure to train claim, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [governmental entity] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id*. (internal quotation marks omitted) (citing *Miller v. Calhoun County,* 408 F.3d 803, 816 (6th Cir. 2005)) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails).

Here, Plaintiff has provided no factual allegations regarding prior instances of unconstitutional conduct *and* the awareness of the same by any individual with policymaking authority prior to the incidents described in Plaintiff's complaint. Plaintiff alleges that Defendant

Katke first came to see Plaintiff and apologized for the care that Plaintiff received on November 7, 2025. Even assuming that Defendant Katke was a "policymaker" within the meaning of the law, Plaintiff has not alleged any facts that would demonstrate that any policymaker was aware of issues concerning the administration of medication and the response to emergencies prior to this point. Therefore, it cannot be said that any individual with policy-making authority made a deliberate choice to engage in any course of action.

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's official capacity claims.

### C.    State Law Claims

Plaintiff also alleges that Defendants were negligent in their provision of medical care. (*See* Compl., ECF No. 1, PageID.11–12.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of  state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants were negligent under state law therefore fails to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants will be dismissed, and the balance of the relevant considerations weighs against the continued exercise of

20

supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law negligence claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Plaintiff is advised that should he appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610-11.

A judgment consistent with this opinion will be entered.


Dated:    August 5, 2025                          /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge